THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HORACE ARGO, Plaintiff in Error.

*Opinion filed December 15, 1908.*

1. CONSTITUTIONAL LAW—*a grand jury investigation is a criminal case within meaning of section 10 of Bill of Rights.* An inquisition before the grand jury is a "criminal case" within the meaning of section 10 of the Bill of Rights, providing that no person shall be compelled in any criminal case to give evidence against himself.

2. SAME—*an immunity order must be as ample as the privilege surrendered.* Statutes empowering courts to enter orders granting to a witness before a grand jury immunity from criminal prosecution if he gives testimony tending to incriminate himself have generally been held to be constitutional, but in enforcing them the court must see that the immunity granted is as broad as the constitutional privilege surrendered by the witness.

3. CRIMINAL LAW—*statute relating to immunity orders relates to bribery cases, only.* Section 35 of division 1 of the Criminal Code, providing that whenever, in any investigation before the grand jury or the trial of any person charged with any offense mentioned in "any of the four preceding sections," it appears that the testimony of any witness other than the person charged with the offense is necessary and that his testimony will tend to criminate himself, the court may enter an order granting him immunity from prosecution, etc., relates only to the offenses of bribery described in the four preceding sections.

4. SAME—*when witness may decline to testify under immunity order.* An immunity order issued under section 35 of division 1 of the Criminal Code to compel a witness to testify in a grand jury investigation does not compel the witness to answer questions tending to show his connection with offenses other than bribery, and he may, without being in contempt of court, refuse to answer such questions, even though the answers might also tend to prove the offense of bribery.

5. SAME—*effect where the charge of bribery is connected with gambling or gaming.* The fact that the charge of bribery under investigation is connected with the offense of gambling and keeping gambling houses affords no justification for compelling a witness to make disclosures which tend to expose him to prosecutions for gambling and keeping gambling houses, even though an immunity order has been issued under section 35 of division 1 of the Criminal Code.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Criminal Court of Cook county; the Hon. A. H. CHETLAIN, Judge, presiding.

EDWARD H. MORRIS, for plaintiff in error:

A person is not in contempt for refusing to obey an order which the court had no authority to make. *Lester* v. *People,* 150 Ill. 408; *Dinsmoor* v. *Bressler,* 164 id. 211; *Keenan* v. *People,* 58 Ill. App. 241.

If the affidavit or petition for the order does not show a case which gives the court jurisdiction to enter the order such order is void, and it is not contempt to disobey it. *In re Hall,* 10 Mich. 208; *Dinsmoor* v. *Bressler,* 164 Ill. 211.

Before a court can enter an order releasing a witness from liability to prosecution and directing him to answer questions that may criminate him, it must appear to the court that a charge of bribery is being investigated by the grand jury,—that the charge is not against the witness. Crim. Code, chap. 38, div. 1, sec. 35, par. 69.

In the absence of a statute granting immunity or giving the court power to do so, a promise of immunity or order granting the same could not be pleaded in bar of any other prosecution. The right to grant immunity is purely statutory. 12 Cyc. 162; *Muller* v. *State,* 79 Tenn. 18.

Where a proceeding is authorized solely by the statute, such statute must be complied with before the court has jurisdiction to act. Nothing is presumed in favor of the jurisdiction of the court—the jurisdiction must affirmatively appear from the record. *Railroad Co.* v. *Hasenwinkle,* 232 Ill. 224; *Railway Co.* v. *Galt,* 133 id. 657; *Firebaugh* v. *Hall,* 63 id. 81; *Munroe* v. *People,* 102 id. 406; *Dinsmoor* v. *Bressler,* 164 id. 211; *In re Peck,* 53 L. R. A. 888; *Ferraria* v. *Vasconcelles,* 23 Ill. 456.

A witness is not bound to answer any question that will tend to criminate him or subject or expose him to a fine,

penalty or forfeiture. *Minter* v. *People,* 139 Ill. 363; *Samuel* v. *People,* 164 id. 379; *United States* v. *James,* 60 Fed. Rep. 257; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Gadsen* v. *Woodward,* 103 N. Y. 242; *People* v. *O'Brine,* 176 id. 253; *Lister* v. *Boker,* 6 Blackf. 439; *People* v. *Rector,* 19 Wend. 569; *Poindexter* v. *Davis,* 6 Gratt. 481; *Langhorne* v. *Commonwealth,* 76 Va. 1012; *Johnson* v. *Donaldson,* 18 Blatchf. 287; *In re Nickell,* 47 Kan. 734; *Northrop* v. *Hatch,* 6 Conn. 361; *Kempshall* v. *Burns,* 24 Wend. 360; *Livingston* v. *Harris,* 3 Paige, 534; *State* v. *Bilansky,* 3 Minn. 246.

An order of court or statute undertaking to grant immunity to a witness must be as full and complete as his silence and protect him as fully from all penalties and forfeitures in both civil and criminal suits, otherwise he is not bound to answer. *Lamson* v. *Boyden,* 160 Ill. 613; *Counselman* v. *Hitchcock,* 142 U. S. 547; *Samuel* v. *People,* 164 Ill. 379; *United States* v. *James,* 60 Fed. Rep. 257; *Bank* v. *Henry,* 2 Denio, 155.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (HOBART P. YOUNG, of counsel,) for the People:

The order of immunity entered on October 2, 1907, is as broad as the constitutional provision that no person shall be compelled in any criminal case to give evidence against himself. *Johnson* v. *McGregor,* 157 Ill. 350; *Robson* v. *Doyle,* 191 id. 566; *Boyd* v. *United States,* 116 U. S. 746; *Lamson* v. *Boyden,* 160 Ill. 613; *Brown* v. *Walker,* 161 U. S. 591; *Counselman* v. *Hitchcock,* 102 id. 547; *People* v. *Foundry,* 201 Ill. 236; *Ex parte Cohen,* 104 Cal. 524; *Coffey* v. *United States,* 116 U. S. 436; Hurd's Stat. 1905, chap. 38, sec. 35.

The court had jurisdiction to enter the order of immunity. 23 Cyc. 1055, 1059; *McKenzie* v. *Donnell,* 151 Mo. 431; *State* v. *Brandhorst,* 156 id. 457; *Smith* v. *State,*

5 Tex. 578; *Branch* v. *Griffin,* 99 N. C. 173; *Orleans* v. *Platt,* 99 U. S. 676; *Wishard* v. *Biddle,* 64 Iowa, 526; *Leopold* v. *People,* 140 Ill. 552; *Railroad Co.* v. *Johnson,* 35 N. J. Eq. 425; *Mayor* v. *Conover,* 5 Abb. Pr. 251; *Tolman* v. *Jones,* 114 Ill. 147.

In a contempt case the offender may be punished by imprisonment in jail or by fine, or both. *Leopold* v. *People,* 140 Ill. 552; *French* v. *Bank,* 79 Ill. App. 110.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a writ of error sued out of this court by Horace Argo to the Branch Appellate Court for the First District to bring up for review the record of a judgment affirming the conviction of plaintiff in error on a charge of contempt of court in refusing to answer certain questions propounded to him by the grand jury of Cook county.

The plaintiff in error was regularly brought before the grand jury as a witness, and upon being interrogated he refused to answer, on the ground that his answers might tend to incriminate him by furnishing evidence connecting him with gambling and keeping common gaming houses, and subjecting him to divers pains and penalties, both by direct prosecution by the People and by prosecution for penalties and forfeitures by individuals. Upon refusal of plaintiff in error to answer the questions propounded by the grand jury the State's attorney presented a petition to the criminal court praying that the court should make an order, under paragraph 69, division 1, of chapter 38, of Starr & Curtis' Revised Statutes of Illinois, releasing plaintiff in error from all liability to be prosecuted or punished on account of any matter to which he should be required to testify before the grand jury. Upon a hearing of the petition, and over the objection and exception of plaintiff in error, the court entered an order of record, the substance of which is that it was "ordered, adjudged and decreed by the said court that the said Horace Argo be and is hereby released from all

liability to be prosecuted or punished on account of any matter to which he may be required to testify before the grand jury aforesaid, in said investigation and inquiry of said charge of bribery." The court then entered a rule requiring the plaintiff in error to testify before the said grand jury and to answer all questions that might be put to him by the grand jury in the course of the inquiry and investigation on the charge of bribery. The plaintiff in error was again interrogated by the grand jury, and refused, for the reasons above stated, to answer certain questions then propounded to him. Thereupon the State's attorney filed an information charging the plaintiff in error with contempt of court in refusing to answer a large number of questions before the grand jury. A list of the questions which plaintiff in error refused to answer was filed with the information and made a part thereof. Upon a rule to show cause why he should not be attached for contempt the plaintiff in error answered the information, in which he again claimed his privilege, and charged that the order of the court granting him immunity was not sufficient to protect him from prosecutions and suits that might be instituted for the recovery of penalties under the statute in regard to gaming and keeping gaming houses. Thereupon the court imposed a fine of $500 upon the plaintiff in error and sentenced him to six months' imprisonment in the county jail, and it is the alleged errors in this judgment that are brought into review in this court.

The list of questions propounded to plaintiff in error is too long to reproduce. We have therefore selected a few, which will serve to show the general character of all of them.

The grand jury were investigating a charge against Mont Tennes and others of bribery. Some of the questions put to plaintiff in error are the following: Q. Are you employed by Mont Tennes?—Q. Do you know anything about the existence of gambling or book making in Chicago?—Q. Did you ever talk with anybody in the city

of Chicago about the opening up or operating of pool rooms?—Q. Did you have anything to do with the operating of the *City of Traverse?*—Q. Did you at various times have discussions with different individuals with reference to payment of money for police protection?—Q. Did you have anything to do with the money that was received from the operation of the *City of Traverse?*—Q. Did you have anything to do with the distribution or paying out of money that was received by that boat?—Q. Did you ever hear that any money received from the operation of that boat had been paid for police protection?—Q. Did you ever discuss with anybody the question of police non-interference with the operation of the boat *City of Traverse?*—Q. How about the operation of any other pool room or gambling game?—Q. Are you working for Mont Tennes? Q. Are you interested in business with Mont Tennes?—Q. Have you ever talked with anybody over the telephone from the premises where it is currently reported that a bomb was exploded last night,—the railroad depot of the Wisconsin Central railroad at Forest Park?—Q. Don't you know, as a matter of fact, that the gambling syndicate had telephone headquarters in that depot?—Q. And that all racing information is sent out from that depot to all parts of the city of Chicago?—Q. Are you familiar with the premises at 91 Washington street?—Q. Have you ever been in the premises at 949 Lincoln avenue?—Q. Are you familiar with the premises on Center street, at No. 135?—Q. Do you know that Mont Tennes operates a pool room on those premises?—Q. Do you know that the pool rooms on these premises were protected?" These and many other similar questions were propounded to plaintiff in error, all of which he declined to answer on the ground already stated.

By the fifth amendment to the constitution of the United States, and a like provision found in section 10 of the Bill of Rights of our own constitution, it is provided that no person can be compelled in any criminal case to give evi-

dence against himself. Under the decisions of the Supreme Court of the United States and of this State an inquisition before the grand jury is "a criminal case," within the meaning of these constitutional provisions. (*Minters* v. *People,* 139 Ill. 363; *Counselman* v. *Hitchcock,* 142 U. S. 547.) The extent of the privilege guaranteed to a citizen under these constitutional provisions has received the consideration of this court, and the rule is firmly established that if the proposed evidence has a tendency to incriminate the witness or to establish a link in a chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense or expose him to penalties or forfeitures, he cannot be compelled to answer. *Minters* v. *People, supra; Lamson* v. *Boyden,* 160 Ill. 613; *Samuel* v. *People,* 164 id. 379.

It is conceded in the case at bar that the questions propounded to plaintiff in error might have a direct tendency to convict him of gambling and of keeping a gambling house, and also expose him to penal actions provided for by paragraph 255 of the Criminal Code, in relation to the recovery of treble the value of the money, goods or chattels which may have been won by plaintiff in error or by other persons while gaming in a common gaming house belonging to plaintiff in error; but it is contended in support of the judgment below, that the immunity order entered by the criminal court of Cook county affords complete protection to plaintiff in error against any action that might be brought against him, either criminal or penal. Whether this is true or not depends upon the construction of the statute under which the court assumed to enter the immunity order. The section of the statute under which the immunity order was entered reads as follows: "Whenever, in any investigation before a grand jury, or the trial of any person charged with any offense mentioned in either of the four preceding sections, it shall appear to the court that

another person than the one charged is a material and necessary witness in the case, and that his testimony would tend to criminate himself,. the court may cause an order to be entered of record that such witness be released from all liability to be prosecuted or punished on account of any matter to which he shall be required to testify; and upon each order being entered, such witness shall be compelled to testify; and if he shall testify, such order shall forever after be a bar to any indictment, information or prosecution against him for such matter. And when any such witness is admitted to testify on the trial, and does so testify, the defendant shall also at his own request be deemed a competent witness, but his neglect or refusal to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect or refusal."

The *"four preceding sections"* referred to in this statute all relate to the offense of bribery. Such offense cannot be committed without the participation of at least two persons. The giving and taking of bribes is made criminal by these sections of the statute. In view of the great difficulty of securing evidence in bribery cases the legislature has passed the section of the statute above quoted, authorizing the court to enter an order granting complete amnesty to either party connected with such offense, and then to compel him to answer questions which otherwise he could not be required to answer. It was never contemplated that the entry of an immunity order under this statute would wholly deprive a witness of his constitutional privilege and compel him to make a complete exposure concerning offenses other than those mentioned in the four preceding sections. To so construe the statute would deprive a witness for whose benefit such immunity order had been entered, of all his constitutional privilege, not only with respect to his connection with the offense of bribery, but all other offenses as well. Such. construction does not appear to us to be consistent with

the language employed nor within the reasons which manifestly led to the enactment of this statute. The order of the court granting immunity to plaintiff in error was no broader in its scope than the statute under which it was made.

If it be conceded that the order was valid to the extent that it would protect plaintiff in error from any indictment or prosecution for any of the offenses mentioned in the four preceding sections, it certainly cannot be held to grant immunity to plaintiff in error from indictment and prosecution for offenses not defined in the bribery statute. It will be seen by reference to the questions propounded to the plaintiff in error that they related, directly or indirectly, to the offenses of gambling and keeping gambling houses. Against prosecution for these offenses the immunity order afforded no protection. The grand jury were apparently investigating a charge of bribery against Mont Tennes, alleged to have been committed by paying money to the police officers of Chicago to protect him in running certain gambling houses with which plaintiff in error seems to have been so connected as to make him criminally liable with Mont Tennes. By thus connecting the charge of bribery with the offense of gambling the grand jury was as liable to obtain evidence proving one offense as the other, by the line of questions propounded to plaintiff in error. The fact that the charge of bribery was thus related to the offense of gambling or keeping gambling houses affords no justification for compelling plaintiff in error to answer questions which would have a tendency to convict him of the latter offenses. If a procedure of this kind can be upheld in respect to bribery and gambling, we see no reason why it might not be employed with equal propriety in regard to any other offense. Thus construed, this statute could be used so as to virtually destroy the constitutional right of accused persons. It is the capability of abuse, and not the probability of it, which is to guide in the interpretation of the statute. When it is attempted to take away the con-

stitutional rights of a citizen and give him in exchange a
statutory immunity, that which is given ought to be as
broad as the right which is taken away.    Statutes of the
class to which this one belongs have often been before the
courts of sister States, and while they have usually been
held to be constitutional, in enforcing them courts are care-
ful to see that the immunuity is as ample as the privilege
under the constitution which is surrendered by the witness.
*People* v. *Kelly,* 24 N. Y. 74; *Republica* v. *Gibbs,* 3 Yeats,
429; *Sta.2* v. *Quarles,* 13 Ark. 307; *Higdon* v. *Hurd,* 14
Ga. 255; *Ex parte Rowe,* 7 Cal. 184; *Wilkins* v. *Malone,*
14 Ind. 153; *People* v. *Sharp,* 107 N. Y. 427; *Bedgood* v.
*State,* 115 Ind. 275; *Counselman* v. *Hitchcock, supra; Em-
ery's case,* 107 Mass. 172.

*Emery's case,* decided by the Supreme Court of Massa-
chusetts, is in many respects like the case at bar.    Emery
was summoned to give testimony before a special commit-
tee of the Senate and House of Representatives charged
with an investigation affecting the public interests and with
authority to require the testimony, and, having refused to
testify, was arrested, brought to the bar of the Senate, and
asked, first, whether, since the appointing of the State con-
stabulary force, he had ever been prosecuted for the sale
or keeping for sale of intoxicating liquors;   and second,
whether he had ever paid any money to any State constable,
or whether he knew of any corrupt practice or improper
conduct of the State police.    Emery, under the advice of
counsel, declined to answer, on the ground that his answer
would accuse him of an indictable offense and furnish evi-
dence by which he might be convicted of such offense.    He
was adjudged guilty of contempt and imprisoned by the
sergeant at arms of the Senate for such contempt.    Emery
sued out a writ of *habeas corpus.*    He was remanded to
jail by the lower court and he removed the case to the Su-
preme Court of the State.    The constitution of Massachu-
setts contained a provision that "no subject shall be held

to answer for any crimes or offenses until the same is fully and plainly, substantially and formally, described to him, or be compelled to accuse or furnish evidence against himself." A statute passed March 8, 1871, provided as follows: "No person who is called as a witness before the joint special committee on the State police shall be excused from answering any question or from the production of any paper relating to any corrupt practice or improper conduct of the State police, forming the subject of inquiry by such committee, on the ground that the answer to such question might tend to criminate himself or to disgrace him or otherwise render him infamous, or on the ground of privilege; but the testimony of any witness examined before said committee upon the subject aforesaid, or any statement made or paper produced by him upon such an examination, shall not be used as evidence against such witness in any civil or criminal proceeding in any court of justice." In regard to the character of the questions put to Emery the Supreme Court says: "It is apparent that an affirmative answer to the question put to him might tend to show that he had been guilty of an offense either against the laws relating to the keeping and sale of intoxicating liquors, or under the statute for punishing one who shall corruptly attempt to influence an executive officer by the gift or offer of a bribe." The Supreme Court of Massachusetts held that the statute failed to furnish to persons to be examined an exemption equivalent to that contained in the constitution or to remove the whole liability against which its provisions were intended to protect, and for that reason such act fails to deprive them of the right to appeal to the privilege secured to them by the constitution. That court used the following language: "The principle applies equally to any compulsory disclosure of his guilt by the offender himself, whether sought directly as the object of the inquiry, or indirectly and incidentally for the purpose of establishing facts involved in an issue between other parties. If the disclosure

thus made would be capable of being used against him as a confession of crime or an admission of facts tending to prove the commission of an offense by himself in any prosecution then pending or that might be brought against him therefor, such disclosure would be an accusation by himself within the meaning of the constitutional provision." This case lends support to the construction which we think our statute should receive.

We hold that the immunity order did not, and legally could not, protect the plaintiff in error from indictment and prosecution for any offense not expressed in the four sections of the statute preceding the one under which the order was entered, and that he had a right to claim his constitutional privilege as to all questions which directly or indirectly tended to connect him with any offense other than those defined in the sections of the statute above referred to. By far the greater number of questions put to plaintiff in error had a plain and undisguised tendency to show his criminal connection with gambling and the keeping of gambling boats or rooms. Other questions connected the offense of bribery and gambling in such a way that the answer would tend to prove both offenses. If the answer called for by the questions tended to incriminate plaintiff in error of some offense against which the immunity order gave no protection, he was entitled to his privilege, no difference what else the answer tended to prove. In refusing to answer these questions plaintiff in error was within the protection of the constitution, from which it follows that the court erred in adjudging him guilty of contempt.

The judgments of the Branch Appellate Court for the First District and the criminal court of Cook county are reversed.                               *Judgment reversed.*