(No. 15549.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MICHAEL BOYLE, Plaintiff in Error.

*Opinion filed June 17, 1924.*

1. CONTEMPT—*court may imprison and fine a party adjudged guilty of contempt.* The power of courts to adjudge punishment for contempt does not depend upon constitutional or legislative grant but is inherent in all courts as necessary to the administration of public justice, and either fine, or imprisonment in the county jail for a definite term, or both, is a proper means of punishment in a civil or criminal contempt proceeding.

2. SAME—*when witness cannot be punished for refusal to answer series of questions.* Where a witness upon an investigation of bribery before the grand jury is asked a series of questions, some of which properly relate to the charge being investigated while others do not, and the witness claims his constitutional privilege and refuses to answer any of the questions, he cannot be adjudged guilty of contempt under a rule to show cause why he should not answer all of the questions, notwithstanding an immunity order entered under section 35 of the Criminal Code is sufficient to protect him in answering those questions which properly relate to the charge under investigation.

3. SAME—*questions must relate to bribery charge under investigation.* Under section 35 of the Criminal Code, providing for the entering of an immunity order so as to compel witnesses to testify in the bribery cases defined in sections 31, 32, 33 or 34, the questions asked must relate to one or more of such offenses on trial or under investigation before a witness can be held guilty of contempt for refusal to answer, but where the questions relate to the charges on trial or under investigation, the fact the answers may reveal other offenses not being tried or investigated furnishes no excuse for refusal to answer if there is a proper immunity order.

4. SAME—*constitution protects witness giving evidence before grand jury.* The provision of section 10 of article 2 of the constitution, that "no person shall be compelled in any criminal case to give evidence against himself," includes as a criminal case an investigation of crime by a grand jury.

5. SAME—*when witness cannot refuse to testify.* A party called as a witness is not entitled to the privilege of silence by reason of fanciful excuses, for protection against an imaginary danger or for the purpose of securing immunity to some third person.

6. SAME—*a witness is not protected from giving evidence that may disgrace him.* The constitutional protection of a witness giv-

ing evidence against himself does not shield the witness from the personal disgrace or opprobrium arising out of the exposure of his crime; and the fact that his testimony may tend to disgrace him does not permit him to refuse to testify, as the constitutional privilege is only to protect him against being compelled to furnish evidence that will subject him to prosecution for a criminal offense.

7. SAME—*when witness may be compelled to give incriminating evidence.* A witness may be compelled to give incriminating evidence where the crime to which his testimony might expose him has been barred for any reason, such as the Statute of Limitations, pardon or acquittal.

8. SAME—*when immunity statute is broad enough to protect a witness.* Where an immunity statute provides that a witness shall not be liable to criminal prosecution for any transaction necessarily disclosed by the testimony which he is required to give or for any transaction concerning which such testimony constitutes an essential link in a chain of evidence against him, the protection of the witness is complete and he is required to testify.

9. SAME—*immunity statute must be as broad as constitutional protection of witness.* An immunity statute providing that a witness shall not be liable to criminal prosecution for any transaction concerning which he may be required to testify, must, to be valid, be co-extensive with the protection afforded the witness by the constitution, as legislation cannot abridge the constitutional privilege.

10. SAME—*section 35 of Criminal Code, providing for immunity of witness in bribery cases, is valid.* Section 35 of the Criminal Code, (Smith's Stat. 1923, p. 666,) providing for an order of court giving witnesses in certain bribery cases immunity from prosecution, is as broad as the constitutional guaranty against incrimination of a witness, and where an order is entered substantially in the language of the statute, the witness has complete protection and may be compelled to testify in answer to proper questions.

11. SAME—*section 35 of Criminal Code does not limit immunity to prosecutions for bribery.* The immunity authorized by section 35 of the Criminal Code to be granted to a witness testifying in the prosecution or investigation of the charges of bribery specified in sections 31, 32, 33 and 34 of such code is not limited to protection against prosecution for the offenses of bribery so defined but includes protection against prosecution for any other offense disclosed by the witness' answers to questions properly relating to the bribery charge being tried or investigated. (Contrary expressions in *People* v. *Argo,* 237 Ill. 173, and *People* v. *Goldberg,* 287 id. 238, overruled.)

HEARD and DEYOUNG, JJ., took no part.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. ROBERT K. WELSH, Judge, presiding.

JUSTIN K. ORVIS, and TIMOTHY J. FELL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ASHBEL V. SMITH, State's Attorney, and EDWARD C. FITCH, (THOMAS J. SYMMES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

The plaintiff in error was adjudged guilty of contempt of court for his refusal to testify before the grand jury of Lake county empaneled at the March, 1923, term of the circuit court of that county, in an investigation by that body to determine whether Edward Kaufman, Edward Courtney and John B. Fields were probably guilty of the crime of bribing jurors in the case of *People* v. *Len Small,* theretofore tried in that county. He was sentenced to the county jail of Lake county for a term of six months, fined $100 and committed to jail until the fine and costs were paid. He has sued out a writ of error to review the judgment.

The State's attorney of Lake county filed his petition in the circuit court alleging that the plaintiff in error was a material and necessary witness in an investigation then pending and on hearing before the grand jury wherein the acts and doings of Kaufman, Courtney and Fields were under investigation and in which the grand jury was investigating a charge of bribery against them, and that the testimony of plaintiff in error sought by the grand jury tended to incriminate him. The petition prayed that plaintiff in error be released from all liability to be prosecuted and punished on account of any matter to which he shall be required to testify and that he be compelled to testify in relation to said charge of bribery. The court entered an order on the petition finding that plaintiff in error was a

material and necessary witness in said investigation and
that his testimony would tend to incriminate him, and or-
dered that plaintiff in error be released from all liability
to be prosecuted or punished on account of any matter to
which he might be required to testify before the grand jury,
and entered a rule against him to appear before the grand
jury instanter and to testify at the investigation there
pending.  Plaintiff in error appeared before the grand jury
but refused to answer certain questions put to him by the
State's attorney in connection with the investigation, on
the ground that the answer to each and every of said ques-
tions tended to incriminate him.    The State's attorney
thereupon filed a petition setting out the allegations of fact
appearing in his first petition, and the further facts of
the immunity order entered by the court, the rule entered
against plaintiff in error, and that plaintiff in error, in re-
sponse to the order of the court, appeared before the grand
jury in connection with said investigation, where certain
questions set out in the petition were propounded to him in
relation to the investigation, and that plaintiff in error, not-
withstanding the immunity order, refused to answer on the
ground that his answers might incriminate him.   This peti-
tion prayed that plaintiff in error be required to show cause
why he should not be held in contempt of court for violat-
ing the order of the court.   The court entered a rule on
plaintiff in error to show cause and continued the case for
two weeks.   An answer was filed by plaintiff in error in
response to the rule, stating that he in good faith believed
that any answers which he might make to said questions,
and each of them, might tend or lead to disclosures that
would incriminate him, and claiming privilege under sec-
tion 10 of article 2 of the constitution of Illinois, which
provides that "no person shall be compelled in any criminal
case to give evidence against himself."   Plaintiff in error
was adjudged guilty of contempt.   Numerous errors are
assigned.

It is contended that the petition and order of immunity were defective because neither showed that plaintiff in error was a person other than the one charged in the investigation. This contention is without merit. Both the petition and order specified that the investigation was against Kaufman, Courtney and Fields. This was sufficient.

It is also complained that the order did not set out the questions asked. They were set out in the petition for rule on plaintiff in error to show cause, and the order makes apt reference thereto. The order was sufficient in this regard.

It is also contended that the court did not have the power to both imprison and fine plaintiff in error. The power of courts to adjudge punishment for contempt does not depend upon constitutional or legislative grant but is inherent in all courts as necessary to the administration of public justice. (*People* v. *Wilson,* 64 Ill. 195; *People* v. *Peters,* 305 id. 223.) Either fine, or imprisonment in the county jail for a definite term, or both, is a proper means of punishment in a civil or criminal contempt proceeding. *Rothschild & Co.* v. *Steger Piano Co.* 256 Ill. 196; *People* v. *Panchire,* 311 id. 622.

The principal questions arise on the matter of the sufficiency of the order of immunity granted. The petition for rule to show cause sets out eighty-five questions which were asked of plaintiff in error before the grand jury, each of which he refused to answer. It will serve no good purpose in this opinion to set out all of these questions. They may be put in two groups. The first four of the following are representative of one group and the balance are typical of the second group:

*Group 1.*

"Did you ever receive any money from Ben Newmark?"

"Did you ever give to anyone any money for services of any kind rendered by said person in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever receive from anyone any money for services of any kind rendered by you in any way, form or manner in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever receive from Ben Newmark any money to be used in any manner, shape or form for services rendered in any way, shape, manner or form in the case of *The People of the State of Illinois vs. Len Small?*"

*Group 2.*

"Did you in any manner corrupt or attempt to corrupt, directly or indirectly, any juror summoned in the case of *The People of the State of Illinois vs. Len Small,* on trial in the circuit court of Lake county, by offering or promising such juror a gift or gratuity with intent to bribe the opinion or influence the decision of such juror in said case?"

"Do you know whether or not anyone offered any juror or prospective juror in the case of *The People of the State of Illinois vs. Len Small* a State job with intent to influence the decision of said juror?"

"Did you ever receive any money from Ben Newmark for the purpose of bribing a juror or prospective juror in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever talk with Edward Courtney, in any manner, shape or form, about the jury in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever talk with Edward Kaufman, in any shape, manner or form, at any time, with reference to the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever give Edward Courtney any money for the purpose of bribing a juror or prospective juror in the case of *The People of the State of Illinois vs. Len Small?*"

"Do you know whether Edward Kaufman ever offered a State job to a juryman or prospective juryman in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever tell Edward Courtney that he would be granted a pardon for services rendered in the case of *The People of the State of Illinois vs. Len Small?*"

"Have you talked with Edward Kaufman since the trial of *The People of the State of Illinois vs. Len Small?*"

"Do you know whether Edward Kaufman promised a juror any money in the case of *The People of the State of Illinois vs. Len Small?*"

"Did you ever give Edward Kaufman any money or other valuable thing for the purpose of bribing or influencing a juryman or prospective juror in the case of *The People of the State of Illinois vs. Len Small?*"

"Do you know whether Edward Kaufman ever offered a State job to a juryman or prospective juryman in the case of *The People of the State of Illinois vs. Len Small?*"

We shall first consider Group 1 as represented by the first four questions hereinabove set out. The inquiry immediately arises as to whether such questions are within the purview of the immunity statute. Section 35 of the Bribery act (Smith's Stat. p. 666,) authorizes immunity where the charge of bribery being tried or investigated is embraced in sections 31, 32, 33 and 34 of the Bribery act. Sections 31 and 32 relate to the offense of bribing or corrupting a judge, justice of the peace, sheriff, coroner, clerk, constable, jailor, Attorney General, State's attorney, county attorney, member of the General Assembly, or other officer, ministerial or judicial, or any legislative, executive or other officer of any incorporated city, town or village, or any officer appointed or elected under the laws of the State. Section 33 relates to bribing or corrupting any master in chancery, auditor, juror, arbitrator, umpire or referee. Section 34 relates to the punishment of a sheriff or constable who receives a bribe for omitting to or delaying in making arrest, taking a prisoner before a magistrate or to prison, etc. Section 35 authorizes the court to make an order granting immunity to a witness, other than the one charged, whose testimony

is necessary in a trial or investigation before the grand jury, of the offense of bribery as defined in sections 31, 32, 33 and 34 of the Bribery act, where such witness' testimony will tend to criminate himself. One or more of the offenses embraced within these four sections must therefore be on trial or under investigation to authorize the immunity order provided for in section 35. It follows that the questions asked such witness must bear some relation to such offense or offenses. The People may not ask questions relating to offenses other than said offense or offenses of bribery charged against the persons being tried or investigated. For instance, the unlawful tampering with or bribing of a witness is not an offense charged in any of said four sections of the statute. That offense is covered elsewhere in the statute and is not included within the scope of investigations or trials in which the court may grant immunity to a witness.

It will be seen that the questions in Group 1 do not show any relation to the charge of bribery against Kaufman, Courtney and Fields, included within the four sections of the statute referred to, and plaintiff in error was not in contempt of court for refusal to answer them or like questions. *People* v. *Newmark,* (*post,* p. 625.)

We come, then, to the questions of which the second group are examples. An examination of them will disclose that they relate to the charge of bribery under investigation by the grand jury and that answers thereto might furnish evidence of such offense. As to these questions plaintiff in error urges that any answers which he might make to said questions, or any of them, would tend to connect him with the crime of conspiracy to bribe a juror, or conspiracy to do an illegal act injurious to the administration of public justice, or to commit a felony or conspiracy at common law, or would show facts which would tend to put him in criminal contempt of court for interfering with or attempting to bribe a juror in the case entitled *The People*

*of the State of Illinois vs. Len Small,* and that the immunity granted to him by the court would not release him from liability to be prosecuted for such offenses. It is also contended by plaintiff in error that the answers to these questions would tend to divulge facts which would or might connect him with the crime of doing an illegal act injurious to the administration of public justice by persuading and inducing certain witnesses having knowledge of certain facts tending to show the guilt of certain persons suspected of having committed a crime to secrete themselves so that they could not be produced as witnesses before the grand jury of said county at the March, 1923, term; that complaint of this offense had been filed against him before one Coulson, a justice of the peace in said county; that any answer he might make to the foregoing questions could be used against him by the grand jury in its investigation of his acts and doings relative thereto, and that the immunity order entered by the court in his behalf would not release him from liability to be prosecuted and punished for the crime charged in said complaint.

Plaintiff in error was not, as we have seen, required to answer questions not relating to the offense of bribery being investigated. As to questions which do relate to such offense, plaintiff in error argues with force that this court in *People* v. *Argo,* 237 Ill. 173, and *People* v. *Goldberg,* 287 id. 238, which followed the *Argo case,* has held that the immunity afforded by section 35 of division 1 of the Criminal Code relates only to the offense of bribery as described in the four sections preceding section 35 and does not prevent prosecution for other offenses that may be disclosed by his answers before the grand jury; that since this court has so held he had a right to rely on that holding; that the trial court was bound thereby, and that he was not guilty of contempt of court in relying on the decisions of this court though in so doing he declined to follow the directions of the trial court. The cases referred to will be

hereinafter considered. The principal question is whether or not the immunity provided by section 35 of division 1 of the Criminal Code protects plaintiff in error's constitutional rights as to the second group of questions.

Section 10 of article 2 of the constitution of Illinois provides that "no person shall be compelled in any criminal case to give evidence against himself." It is conceded that an investigation of crime by a grand jury is a criminal case within the meaning of this section of the constitution, and it is so held by authorities generally. The testimony sought to be procured from plaintiff in error by the grand jury being of the character referred to in section 10 of article 2, the question is whether he may under the law be compelled to give it.

It has long been established by all the courts of this country that a witness cannot be required to criminate himself and thereby bring punishment upon him by reason of his disclosures not voluntarily made. Admissions and confessions freely made have always been considered incriminating evidence of a high order. By reason of this fact the tendency to entrap a prisoner or browbeat him into a confession brought about such a degree of abuse in England, notably through the trials of Sir Nicholas Throckmorton, and Udal, the Puritan minister, that the system became so odious as to give rise to a demand for its abolition, and while no statute was there passed, it became the rule in that country that no one should be punished for a crime concerning which he was compelled to testify; and while in England punishment was prevented usually by a recommendation for pardon to the crown, the right in this country became fixed by enactment in the Federal constitution and in the constitution of practically every State of the Union. This ancient principle of the law of evidence is firmly established by our decisions. (*Minters* v. *People,* 139 Ill. 363; *People* v. *Butler Street Foundry Co.* 201 id. 236; *Manning* v. *Securities Co.* 242 id. 584; *People* v. *Argo,*

*supra; People* v. *Goldberg, supra; People* v. *Cochrane,* 307 Ill. 126; *People* v. *Spain,* 307 id. 283.) A party when called as a witness is not, however, entitled to the privilege of silence by reason of fanciful excuses, nor is the privilege to be so far extended that it may be put forward for sentimental reasons, or for protection against an imaginary danger, or for the purpose of securing immunity to some third person. (*People* v. *Butler Street Foundry Co. supra; Brown* v. *Walker,* 161 U. S. 591.) In *Regina* v. *Boyes,* 1 B. & S. 311, Chief Justice Cockburn said: "To entitle a party called as a witness to the privilege of silence, the court must see from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer. * * * If the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself the effect of any particular question." This rule has likewise been adopted by this and other courts of this country. *People* v. *Butler Street Foundry Co. supra; Brown* v. *Walker, supra; Counselman* v. *Hitchcock,* 142 U. S. 547.

These being the underlying principles of this case, plaintiff in error was in nowise required to give testimony that would criminate him unless his privilege under the constitution is fully preserved to him in some other way. The constitutional privilege is, to be freed from giving testimony that may lead to prosecution and punishment for crime. The constitution does not purport to shield the witness from the personal disgrace or opprobrium arising out of the exposure of his crime. The fact that his testimony may tend to degrade him does not permit him to refuse to testify. (*People* v. *Kelly,* 24 N. Y. 74; *Brown* v. *Walker, supra.*) This rule is but just. One who commits a crime ought not call upon the courts to protect his name. Public welfare is of vastly greater importance than the reputation

of a self-confessed criminal. The constitutional privilege is not for the purpose of concealing blemishes on the character of the witness but to protect him against being compelled to furnish evidence to convict him of a criminal offense. It has also been held that where the crime to which his testimony might expose him has been barred by the Statute of Limitations he may be compelled to answer. (*Lamson* v. *Boyden,* 160 Ill. 613; *Weldon* v. *Burch,* 12 id. 374; *Brown* v. *Walker, supra; Calhoun* v. *Thompson,* 56 Ala. 166; *People* v. *Mather,* 4 Wend. 229.) So where he has been pardoned or found not guilty. (*Ex parte Cohen,* 104 Cal. 524.) Another exception to the rule arises where immunity is afforded by statute against punishment for a crime which the testimony of the witness may disclose. Thus, if the legislature by the enactment of an immunity statute has provided that the witness shall not be liable to criminal prosecution for any transaction necessarily disclosed by the testimony which he is required to give and for any transaction concerning which such testimony constitutes an essential link in a chain of evidence against him, the immunity afforded by the statute is thereby made coextensive with the protection afforded him by the constitution and becomes a complete substitute for it, and he is required to testify. In the consideration of such statutes the test is whether the immunity becomes a complete substitute for the constitutional privilege. Legislation cannot abridge this constitutional privilege, but the statute must be so broad as to have the same scope and effect.

Numerous cases have been considered by the courts of this country on this subject. In the case of *Counselman* v. *Hitchcock, supra,* the court had under consideration a statute known as section 860 of the Revised Statutes of the United States, which provided: "No pleading of a party nor any discovery or evidence obtained from a party or witness by means of a judicial proceeding in this or any foreign country shall be given in evidence or in any manner

used against him   *   *   *   in any criminal proceeding, or
for the enforcement of any penalty or forfeiture." It was
there held that as the statute declared only that the plead-
ing, discovery or evidence should not be used against the
party giving it, it was not co-extensive with the constitu-
tional privilege; that it did not supply complete protection
from all perils against which the constitutional prohibition
was designed to guard and was not a full substitute for
that prohibition; that in order to be valid a statutory enact-
ment must afford absolute immunity against future prose-
cution for an offense which the answer to the questions may
disclose.

In *Emery's case,* 107 Mass. 172, the Supreme Court of
that State passed upon the sufficiency of an immunity stat-
ute. The provisions in the declaration of rights in the con-
stitution of that State declared that no subject should be
"compelled to accuse or furnish evidence against himself."
The statute provided that "no person who is called as a wit-
ness before the joint special committee on the State police
shall be excused from answering any question or from the
production of any paper relating to any corrupt practice
or improper conduct of the State police   *   *   *   on the
ground that the answer to such question or the production
of such paper may criminate himself,   *   *   *   but the tes-
timony of any witness examined before said committee upon
the subject aforesaid, or any statement made or paper pro-
duced by him upon such examination, shall not be used as
evidence against such witness in any civil or criminal pro-
ceeding in any court of justice." Emery was summoned as
a witness and refused to answer certain questions on the
ground that they would criminate him. The subject of the
inquiry before the joint special committee was the guilt of
the State police of bribery and corruption. The witness
was asked whether he had ever been prosecuted for keep-
ing for sale intoxicating liquor, and whether he had paid
any money to any State constables or knew of any corrupt

practice or conduct on their part. The court held that the language of the statute was not sufficient to protect the witness to the extent of his constitutional privilege; that the disclosure of any fact which might constitute an essential link in a chain of evidence against him to show him guilty of a crime must, in order that the act be effectual, be incapable of use against him; and that the statute, unless it relieves him from all liabilities, is ineffectual as a substitute for the protection secured to him by the privilege of the constitution and invalid as infringing upon his constitutional privilege; that the statute there being considered, by providing only that the testimony given by the witness could not be used as evidence against him, did not go far enough to prevent his being convicted of any crime concerning which he might give evidence, and therefore the immunity offered by it was not as broad as his constitutional privilege, and the statute was for that reason invalid.

In *Cullen* v. *Commonwealth,* 24 Gratt. 624, the Court of Appeals of Virginia was considering a contempt charge against a witness for refusing to answer concerning what he knew of a certain duel, the ground of his refusal being that his answer would tend to criminate him. Section 10 of article 1 of the constitution of Virginia provided that no man "can be compelled to give evidence against himself." An act of the legislature of that State regarding dueling provided that "every person who may have been the bearer of such challenge or acceptance, or otherwise engaged or concerned in any duel, may be required, in any prosecution against any person but himself,  *  *  *  to testify as a witness to such prosecution; but any statement made by such person as such witness shall not be used against him in any prosecution against himself." The court held that the effect of this statute was to invade the constitutional right of the citizen, for the reason that while the testimony given could not be used against him in any prosecution he was not protected from prosecution concerning the matters to

which he was required to testify, and that the statute, therefore, was not as broad as his constitutional privilege. Numerous other cases are cited to the same effect. (28 R. C. L. 441, and note appended thereto.)

Other cases where statutes have been held not to be as broad as the constitutional guaranty have been those where, as in the cases just cited, the immunity statute provided that the testimony of the witness should not be used in a trial against him, or immunities of like character were provided which, however, did not release the witness from all liability to be prosecuted or punished on account of the matter to which he was required to testify. In the case of *Brown* v. *Walker, supra,* the Supreme Court of the United States was again considering this question. The act, however, was that of February 11, 1893, chap. 83, 27 Stat. 443. That act, after providing that no person shall be excused from attending and testifying before the Interstate Commerce Commission in obedience to its subpœna upon the ground that his testimony or evidence may tend to criminate him or subject him to a penalty or forfeiture, provided: "But no person shall be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify or produce evidence, documentary or otherwise, before said commission or in obedience to its subpœna," etc. That act was an amendment of section 860, considered in the *Counselman case,* and was apparently enacted to comply with the judgment of the court in that case. The court in the *Brown case* holds that the act of Congress there under consideration completely protects the constitutional privilege of the witness and is therefore valid. It was there said: "While the constitutional provision is justly regarded as the most valuable prerogative of the citizen, its object is fully accomplished by the statutory immunity, and we are therefore of the opinion that the witness was compellable to answer."

The courts of numerous States whose statutes contain immunity provisions similar to those of this Federal statute have held that such statutes afford a complete substitution for the constitutional guaranty.

In *State* v. *Newell,* 58 N. H. 314, the constitutional provision was that no subject shall "be compelled to accuse or furnish evidence against himself." A statute of that State provided as to immunity: "But no testimony so given by him shall in any prosecution be used as evidence, either directly or indirectly, against him, nor shall he be thereafter prosecuted for any offense so disclosed by him." It was there held that the immunity afforded by that statute was complete, and the witness was compelled to answer.

In *Bedgood* v. *State,* 115 Ind. 275, the constitutional provision was that "no person in any criminal prosecution shall be compelled to testify against himself." The statute provided that testimony given by such witness should not be used in any prosecution against him. This statute was held to be a complete protection to the witness, and the witness was required to answer.

In *Ex parte Cohen, supra,* the court had before it a constitutional provision of the character here considered, and a statute providing that the testimony given should not be used in any prosecution against the witness, and that he should not thereafter be liable to indictment, information or prosecution for the offense with reference to which his testimony was given. It was there said, that if by reason of the fact that the transactions concerning which he testified did not constitute an offense, or if his acts were no longer punishable, as where the law creating the offense had been repealed, or if the witness had been tried for the offense and acquitted or had served the sentence pronounced as punishment therefor, or if the offense had been barred by the Statute of Limitations, he could not claim the privilege, and that he was also deprived of claiming it if the legislature had declared that he should not be prosecuted or

punished for any offense of which he gave evidence. The same view was expressed in *Hirsch* v. *State*, 67 Tenn. 89.

We come, then, to a consideration of our own statute in the light of these decisions and of the provisions of section 10 of article 2 of our constitution, which is, in effect, the same as the Federal and State constitutions herein referred to.

Section 35 provides as follows: "Whenever, in any investigation before a grand jury, or the trial of any person charged with any offense mentioned in either of the four preceding sections, it shall appear to the court that another person than the one charged is a material and necessary witness in the case, and that his testimony would tend to criminate himself, the court may cause an order to be entered of record that such witness be released from all liability to be prosecuted or punished on account of any matter to which he shall be required to testify, and upon such order being entered, such witness shall be compelled to testify; and if he shall testify, such order shall forever after be a bar to any indictment, information or prosecution against him for such matter." (Smith's Stat. 1923, p. 666.)

The language of this section providing immunity is in substance identical with that of the statutes in the second group of cases hereinbefore referred to. It is evident from a consideration of both the first and second groups of cases that the language of this statute is as broad as the constitutional guaranty. A witness who testifies in answer to questions pertaining to a matter "in any investigation before a grand jury," or on any "trial of any person charged with any offense mentioned in either of the four preceding sections," where he is other than the one charged in such investigation or trial and "is a material and necessary witness" and his testimony would tend to criminate him, is completely protected "from all liability to be prosecuted or punished on account of any matter to which he shall be required to testify," and the order entered by the court in

such case "shall forever after be a bar to any indictment, information or prosecution against him for such matter." The immunity statute, passed in connection with the Bribery act, was enacted by reason of the great difficulty in securing evidence in bribery cases. The legislature, in providing complete amnesty for a witness who testifies, did so in order that those difficulties might be overcome. In no other way than by giving complete amnesty can an immunity statute be sustained, for in no other way can the act become a guaranty as complete as the constitutional privilege taken away. Courts will so construe a statute as to maintain its validity when it can be done.

Does the protection of the immunity provision of this section extend only to bribery as the same is defined in the four sections of the statute immediately preceding the immunity section here quoted? Such a construction is not borne out by the language of that section. The words, "in either of the four preceding sections," clearly specify the circumstances under which the court may enter an order granting immunity, and not the limit of the immunity when once granted. This section plainly provides that the court may enter an order of immunity whenever, in any investigation before a grand jury or on the trial of "any offense mentioned in either of the four preceding sections," criminating testimony of one not charged is required. The extent and effect of the immunity granted is specified in the following language: "that such witness be released from all liability to be prosecuted or punished on account of any matter to which he shall be required to testify," and "such order shall forever after be a bar to any indictment, information or prosecution against him for such matter." To give the language of this act a construction less broad than the import of its plain words is to render the act void, as failing to provide a complete substitute for the constitutional guaranty that no witness shall be compelled to give evidence against himself. If immunity extended to the of-

fenses specified in the "four preceding sections," only, it might well be that testimony which the witness was compelled, under the order of the court, to give, would disclose facts forming the basis of a criminal prosecution against him for an offense other than such offenses as are embraced within those sections and the offense being tried or investigated. This is the very thing which his constitutional privilege protects him against. Such a construction of the act would render it not only ineffectual, but void. So construed it would be an invasion of the constitutional privilege of the witness.

In *People* v. *Argo, supra,* an inquiry was being conducted concerning a charge of bribery against certain police officers and others. The witness was asked questions tending to show that he conducted a gambling house. It was evident from the questions asked that they did not relate to the subject matter of the inquiry by the grand jury, and they were for that reason not questions which the witness was required to answer. What was said in the opinion in that case, however, concerning the scope of the immunity afforded by the statute, is not in accord with the practically unanimous decisions in this country concerning such statutes and is not adhered to. In *People* v. *Goldberg, supra,* Goldberg was charged with the illegal sale of liquor. He pleaded immunity under an order of court requiring that he appear before the grand jury and testify concerning the charge of bribery against the State's attorney of Lake county then under investigation, and that the charge against him (Goldberg) arose out of his testimony in the bribery investigation. While in that case we held that the prosecution of Goldberg was not shown to have arisen out of his testimony before the grand jury, the erroneous construction of the act laid down in the opinion in the *Argo case* was followed. The question of the correctness of that construction was not there raised in the briefs. Counsel on both sides, as appears from their briefs, followed that con-

struction, and the question there was whether the *Argo case* applied. For reasons hereinbefore given, the construction placed on the act in the *Argo case* was wrong, and in that far that case and the *Goldberg case* are overruled.

While, as we have seen, the People may not ask questions that do not show some relation to the bribery charge being tried or investigated, if such questions are so related and immunity is granted under section 35, the witness is not excused from answering even though his answer may furnish a link in a chain of evidence against him of some other and different offense, as he is protected by the order of immunity. The fact that the questions and answers may relate to another offense not being tried or investigated furnishes no excuse for refusal to answer if it can be seen that they also relate to the charges on trial or under investigation.

Proceeding, then, to an application of this statute to the second group of questions put to plaintiff in error, it is seen from an examination of them and the statute as herein construed, that the order of immunity, which was substantially in the language of the statute, afforded plaintiff in error complete protection against any prosecution or punishment arising out of his answers to such questions.

The question then arises, Can the plaintiff in error be held guilty of contempt of court for his refusal to answer those questions which were of themselves competent, when he has been ordered to answer a series of eighty-five questions, a number of which, as we have seen, did not show that they bore any relation to the investigation of bribery against Kaufman, Courtney and Fields and which the State did not have a right to ask? He was brought before the court under a rule to show cause why he should not answer them all. They were submitted to him as a series. The court required him to answer them all. He was adjudged guilty of contempt for refusal to answer all. It was one examination. He was not ordered to answer merely those questions which he could be required to answer but a number that he

could not be compelled to answer. It was held in *Paxton
v. Douglas,* 16 Ves. Jr. 238, that when a series of questions
are put to a witness, some of which tend to criminate him
and some of which do not, he may not be compelled to
answer the latter. It was likewise so held in *People* v. *Ma-
ther,* 4 Wend. 230, and *Foot* v. *Buchanan,* 113 Fed. 156.
This rule as announced in these and other cases, likewise
finds support in reason. Plaintiff in error was ordered to
answer the questions put to him. Had he replied that he
would answer some but not others he would not have been
relieved from the order entered against him, even though it
could be said that he should have been required to so choose.

It was error for the court to require that plaintiff in er-
ror answer the series of questions asked of him and to ad-
judge him guilty of contempt for refusal so to do. The
judgment will therefore be reversed.     *Judgment reversed.*

Heard and DeYoung, JJ., took no part in the decision
of this case.

---

(No. 15979.—Reversed in part and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Er-
ror, *vs.* MIKE DAVID JENNINGS *et al.* Plaintiffs in Error.

*Opinion filed June 17, 1924.*