People of the State of Illinois, Defendant in Error, v. Herbert Schultz, Plaintiff in Error.

### Gen. No. 41,787.

Heard in the first division of this court for the first district at the June term, 1941. Opinion filed December 22, 1941. Rehearing denied January 5, 1942.

Julius Reznik, of Chicago, for plaintiff in error.

Thomas J. Courtney, State's Attorney, for defendant in error; Edward E. Wilson, John T. Gallagher and

MELVIN S. REMBE, Assistant State's Attorneys, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

Schultz, found guilty of a direct contempt of court and sentenced to 90 days in jail, has sued out this writ of error. It appears from the record Walter Appelt was on trial before Judge GRABER, sitting in the criminal court, charged with an offense. Schultz was called as a witness for the People. It appeared he had signed a written statement March 12, 1941, to the effect that March 11, 1941, at about 3 o'clock in the morning Walter Appelt came to the home of Schultz in Stewartson, Illinois, and informed him he had just shot the man who was breaking up his home; that Appelt wanted Schultz to take care of his (Appelt's) automobile; that Schultz drove Appelt in his own automobile to Effingham for some coffee, then to the home of the parents of Schultz for breakfast, and then to a lawyer's office in Shelbyville. Schultz and Appelt were together until about noon of the same day, when Appelt, at the lawyer's suggestion, boarded a train in Decatur, for Chicago, and Schultz drove back to Stewartson.

The order of commitment contains a complete transcript of the proceedings had before the court in so far as the same affected Schultz. It appears Schultz was reluctant to testify but under direction of the court said he was 28 years of age, an automobile mechanic by trade, resided at Stewartson, Illinois, with his wife and child; was a cousin of defendant Appelt; the signature to the written statement was his own, the statement was made freely and voluntarily by him March 19, 1941. In response to other questions he refused to testify when he had last seen Appelt, whether he (the witness) was in the city of Chicago March 10, whether he was in his home at Stewartson, Illinois, March 11

at 3 a.m., or whether he was in the city of Chicago March 28, 1941. In reply to a question as to whether he had ever seen People's exhibit 2, he replied in the affirmative; also that he had signed it. Asked if the statement was the truth at the time he made it, he refused to testify and also refused to say whether it was made on the date upon it, which was March 12, 1941. As reasons in each case for his refusal to testify he stated, in substance, that he stood upon his constitutional rights that he might not be compelled to incriminate himself by his testimony.

All this occurred, apparently at the morning session of the court, and he was directed to return at 2 o'clock and not to talk to anyone or allow anyone to talk to him in the meantime. He returned at 2 o'clock, when the court informed him he had gone over the statement very thoroughly and while a wide latitude would be allowed in the event there was any doubt as to whether an answer might incriminate him, the court was of the opinion there was nothing in the statement that would incriminate the witness in any way. He was also informed that it had been held that a person could not hide behind the constitutional provision in question merely to protect somebody else, and that the court was therefore ruling that he should answer any questions pertaining to any matters contained in the statement, and that in the event he would not answer the court would take summary action. The witness was asked if he understood, and said he did.

The witness was then interrogated as to his name, where he lived and whether he knew Walter Appelt, to which he replied he did. The witness was then asked how long he had known him, and the witness said he refused to testify. The court told him he would have to answer the question, and then he replied, all of his life. He was asked, "When was the last time you saw him?" The witness replied, "I refuse to testify." The court told him he would have to answer the question. The witness answered, "It was—I could not tell

you the date I seen him.'' The recollection of the witness being refreshed, he said he saw Appelt early on the morning of March 11, 1941, at his own home in Stewartson, Illinois, and at about the hour of 3 o'clock in the morning. ''Q. 'Did you have a conversation with him at that time?' The Witness: 'I refuse to testify.' The Court: 'You will have to answer that question.' A. 'I did.' Mr. Moynihan: Q. 'What was the conversation that you had with defendant, Walter Appelt, at that time?' The Witness: 'I refuse to testify.' The Court: 'You will have to answer that question. I will remand you to the County Jail until such time as you will answer his questions. Do you understand what I said?' The Witness: 'I refuse.' The Court: 'All right. The witness stands committed to the County Jail. It will in no wise incriminate you, does not tend to incriminate you in any way, shape or form, in the statement that you made.' '' This question was then asked the witness, ''And at that time did you say to him, referring to the defendant, Walter Appelt, 'Did you kill him?' The Witness: 'I refuse to testify.' Mr. Moynihan: 'In answer to that question did he say to you, ''I don't know whether I killed him or not, but I shot him four or five times?'' ' The Witness: 'I refuse to testify.' Q. 'And your position is now that no matter what question I ask you in regard to that your answer will be the same, you refuse to testify?' A. 'That's right.' Q. 'In spite of the fact that the court has warned you that you must answer.' The Witness: 'That is right.' The Court: 'All right. The bailiff will take this man into custody and he will be committed to the County Jail for ninety days. You may draw the order.' ''

The court thereupon found the defendant, who was present in open court, was by reason of his conduct guilty of a direct contempt of the court and made the order of commitment heretofore recited.

The provision that no person shall be compelled in any criminal case to give evidence against himself is

a constitutional right under the Constitution of Illinois and of the United States. (Constitution of Illinois, 1870, Art. 2, sec. 10; Constitution of the United States, V. Amendment.) The question has often been before the courts as to the circumstances under which any person called as a witness has a right to avail himself of these constitutional provisions. Manifestly it cannot be left entirely to the judgment and discretion of the person called as a witness, for such an interpretation of the rule would be quite inconsistent with the public interests and would make proceedings in the courts farcical at the election of any person who might give this reason, however fanciful, for his refusal to testify. Trial judges should always be careful to see that the constitutional right is not infringed, but it has been held in practically all the cases that it is for the person claiming the privilege in the first instance to show he has reasonable ground to believe that his answers, if given, might tend to incriminate him. This fact, in the first instance, is for the court to determine from all the facts and circumstances appearing in the case.

The rule was well stated by Chief Justice COCKBURN in *Regina v. Boyes,* 1 B. & S. 311, quoted with approval by the Supreme Court of Illinois, in *People v. Boyle,* 312 Ill. 586, at 596, as follows: "The court must see from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer."

We have carefully read the entire record and entertain no doubt that the sole and only purpose which led this witness to defy the court and refuse to answer the questions, was his own desire to protect his cousin from prosecution. The constitutional provisions above stated cannot thus be used to pervert justice.

The judgment of the trial court is affirmed.

*Affirmed.*

McSURELY, P. J., and O'CONNOR, J., concur.