[L. A. No. 18096.   In Bank.   Mar. 26, 1942.]

CHARLES J. RITTENHOUSE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Morris Lavine for Petitioner.

J. H. O'Connor, County Counsel, Harold W. Kennedy, Assistant County Counsel, John F. Dockweiler, District Attorney, and W. E. Simpson, Deputy District Attorney, for Respondent.

CURTIS, J.—Petition for a writ of prohibition directed to the Superior Court of the State of California, in and for the County of Los Angeles, to restrain said court from trying a certain criminal action therein pending against petitioner, or from making any order or taking jurisdiction in said action except to dismiss said case.

Petitioner was charged in the indictment with the crime of bribery in violation of section 68 of the Penal Code. Said indictment contained 61 counts, each of which was in the same language excepting as to dates. Petitioner during the entire time embraced within the accusations of said indictment was a deputy sheriff of the county of Los Angeles, and it was charged in Count One of said indictment that defendant on the 26th day of September, 1938, "did wilfully, unlawfully, corruptly, knowingly and feloniously, ask, receive, and agree to receive of and from John R. Osborne, a bribe, to-wit: the sum of One Hundred Dollars ($100.00), lawful money of the United States, for the purpose of corruptly influencing the action of said defendant, CHARLES RITTENHOUSE, and upon an agreement and understanding that the action of said defendant, CHARLES RITTENHOUSE, upon a matter then and there pending, and which was then and there before, and which might be brought before said defendant, CHARLES RITTENHOUSE, in his official capacity, to-wit, the arrest of the said John R. Osborne, and his agents and employees, for violations and a violation of various subdivisions of Section 337a of the Penal Code of the State of California, should be unlawfully and corruptly influenced thereby, said defendant, CHARLES RITTENHOUSE, being then and there an executive officer, to-wit, a duly appointed, commissioned and acting Deputy Sheriff of the County of Los Angeles, State of California."

Respondent filed a demurrer and answer to said petition. In view of the conclusion which we have reached, the issues raised by the answer become immaterial.

The indictment was returned on May 28, 1941. Prior

thereto and on May 14, 1941, petitioner, in response to a subpoena issued and served on him, testified before the grand jury of said county in an investigation then being made by said grand jury. In his petition for said writ petitioner has set forth certain matter occurring before the grand jury on the occasion of his appearance as a witness before that body and has made the reporter's transcript of his testimony taken at that time a part of his said petition. It is petitioner's contention that at said session of the grand jury he testified to matters concerning gaming in the county of Los Angeles, and particularly with reference to gaming at a place operated by one John R. Osborne in the so-called West Hollywood strip, which is not within the limits of any city and is therefore under the police jurisdiction of the county of Los Angeles. He accordingly claims that he was given statutory immunity under section 334 of the Penal Code, ''and that such statutory immunity has removed the jurisdiction of said superior court to try the petitioner on the charge on which he was indicted.''

On the other hand, respondent contends that petitioner testified voluntarily before said grand jury and expressly waived any immunity afforded him by the terms of said section 334. As a further defense to said petition, respondent urges that the immunity provided for by said section of the Penal Code attaches only in those cases in which the investigation concerns gaming violations, and that it may not be invoked when, in an investigation of another class of offense, testimony respecting gaming is received because it is relevant to such other offense under investigation. In view of the conclusion we have reached in respect to this last-mentioned contention, we deem it unnecessary to consider the argument of respondent that petitioner voluntarily testified before said session of the grand jury and expressly waived the immunity afforded by the terms of section 334 of the Penal Code.

Respondent's position, as indicated by the language of its second contention stated above, is that the investigation at which petitioner testified was one to determine whether section 68 of the Penal Code (Receiving a Bribe by a Public Officer) had been violated by petitioner, and not whether section 337a or any other section of the Penal Code concerning the offense of gaming had been violated. In the case of *In re Critchlow,* 11 Cal. (2d) 751 [81 P. (2d) 966], this court, speaking of the immunity granted under section 334 of the Penal Code, held at page 760: ''The protection is

afforded only when the testimony is given in investigations of offenses which are the subject of the statute, viz., gaming; and not when for any reason the investigation is of a different class of offense.''

The record before us, and particularly the reporter's transcript, clearly indicates and shows that the investigation at which the petitioner testified concerned the offense of bribery. While there was testimony which related to violations of the gaming laws of the state, this was necessarily admitted to prove the charge for which petitioner was indicted, which was accepting money from John R. Osborne to protect the latter from arrest for violating the gaming laws of the state. In the first place, these alleged violations of the gaming laws occurred during the years 1938 and 1939, and the testimony of the petitioner was given before the grand jury on May 14, 1941, from two to three years after the asserted violations of the gaming laws by Osborne, the alleged bribe-giver. The record before us not only fails to show that any proceedings were pending against Osborne based upon those violations, but the reporter's transcript shows that Osborne never was prosecuted for said offenses. The whole tenor of petitioner's testimony before the grand jury indicates that the investigation was made for the purpose of determining whether he had accepted money from Osborne to protect the latter from arrest. We shall note only a few passages from the reporter's transcript in support of the foregoing statement.

Petitioner testified that on one occasion in the early part of 1941, he had a conversation with a deputy district attorney, who stated to him: ''Let me speak very frankly. After all, we are on the other side of the fence right now. In about ten days I am going before the Grand Jury, and if I do you are going to the penitentiary.'' To which petitioner replied: ''I have played the game squarely down there. I am taking a lot of stuff that has not been coming to me because I have been played in the center with Contreras.'' Further on petitioner stated: ''I hadn't finished my statement about what I meant by being put in the center. So Utley and Coyne then started a campaign of smear, in West Hollywood and Sunset Boulevard with my name and Contreras' name tied together, and Mr. Biscailuz's name, and they enumerated a lot of places that had been knocked over for over a year or two years. That is what I mean by saying I have been kicked around.

I was constantly being called on to explain this and that report.''

In his testimony petitioner admitted that there were many places where illegal gaming was carried on; in fact, they were wide open. In this connection we quote from his testimony as follows: ''I mean wide open like the place over the Home Ice Company ran for over a year without ever being bothered. That's what I mean by running wide open, and there are lots of places. When Contreras said not to knock them over, I followed orders.'' By the expression ''knock them over'' petitioner evidently meant that he closed them up and arrested the operators.

In his testimony petitioner referred to a number of other places where illegal gaming was being carried on and where no arrests were made due to orders from his superiors. He said that in some instances he was instructed not to make an arrest until he saw a bet made, and that he spent long intervals of time in some of these places ''until a bet would come in.'' He did not state whether he made an arrest or closed the place after he witnessed the making of a bet.

Petitioner testified in some detail as to the operations of Osborne, but, as stated above, that Osborne was never prosecuted as there was not evidence on which to prosecute him. He was asked whether he received ''$100 a week from Mr. Osborne for protection for his bookmaking joint,'' to which he replied: ''I received nothing from Mr. Osborne or any one else for protection or anything else at any time.'' At another place in his testimony, referring to a man named Utley, petitioner stated: ''He also told me he knew where somebody had given me money. I told him at that time he knew where to go. There isn't a person who can say they have ever given me a cent.''

After the deputy district attorney had finished questioning the petitioner, the latter made the following statement: ''There is one statement I would like to make. I want you ladies and gentlemen to know that as a citizen and as a father of two boys long in the service of this country—one is a sergeant who received an appointment to Annapolis—and I have been a conscientious officer. I want you to weigh those facts and where these other facts are coming from—this Osborne with his record, a man who robbed widows and orphans at Valhalla and the Government sent him away; a

man who has constantly violated every law since he has been here, even coming to Mr. Cooper and telling him that there was a corrupt officer. I want you to consider Mr. Utley and the man I have mentioned, Mr. Coyne. That is all I asked you. I believe when you weigh those things you will arrive at the right result, and that is all I ask you. Thank you for your courtesy.''

Reading the reporter's transcript from one end to the other, we find nothing therein, or from any other source, that would indicate that the purpose of the investigation in which the petitioner testified before the grand jury was to ascertain whether the laws of the state against gaming were being violated. All acts which purported to be violations of the gaming laws of the state were shown to have been committed long before petitioner gave his testimony before the grand jury. No prosecutions for such violations were then pending. On the other hand, the record before us, and particularly the reporter's transcript, shows that the investigation at which petitioner testified was being held for the purpose, and for the sole purpose, of determining whether petitioner had accepted money to protect parties guilty of violating the gaming laws of the state. The evidence given by the petitioner concerning the offense of gaming was merely incidental and preliminary to the proof of the charge of bribery then under investigation. It goes without saying that a public officer could not be found guilty of accepting money for protecting a person guilty of violating the gaming laws of the state without some evidence to show that said laws were being violated and that the officer had knowledge of such violation. Insofar as any evidence concerning gaming was given by the petitioner before the grand jury, it was confined to proof that illegal gaming existed within his district to his knowledge. As we have seen, this evidence was offered not for the purpose of prosecuting the person guilty of violating the gaming laws, but as a foundation upon which to predicate the charge of bribery, for which crime petitioner was subsequently indicted. No protection is afforded a witness testifying in an investigation when the subject of the investigation is bribery. It is confined solely to those witnesses who testify in a case where the defendant is charged with gaming or in an investigation of the offense of gaming. (*In re Critchlow, supra.*) Petitioner's testimony was not given in either of such proceedings. He is therefore not protected from prosecution based upon the indictment charging him with the crime of bribery.

For the reasons herein stated the petition for a writ of prohibition is denied and the alternative writ is discharged. Petitioner also asked for a writ of review of the order denying his challenge to the jurisdiction of the court to try him upon said indictment, in case his petition for a writ of prohibition should be denied. The petition for a writ of review is denied for the same reasons upon which we base our denial of the petition for a writ of prohibition.

Gibson, C. J., Shenk, J., Carter, J., and Traynor, J., concurred.

Houser, J., dissented.

Petitioner's application for a rehearing was denied April 23, 1942. Edmonds, J., and Carter, J., voted for a rehearing.