[No. G014669. Fourth Dist., Div. Three. Dec. 23, 1993.]

JACK ARTHUR BLACKBURN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
PAMELA KELSO, Real Party in Interest.

## COUNSEL

Ronald D. Davis for Petitioner.

Michael Capizzi, District Attorney, Maurice Evans, Assistant District Attorney, Guy Ormes and Burl Estes, Deputy District Attorneys, for Respondent.

R. Richard Farnell and Ronald E. Norman for Real Party in Interest.

## OPINION

MOORE (E. C.), J.*—Real party in interest, Pamela Kelso who is now 26 years old, has accused her stepfather, Jack Arthur Blackburn, the petitioner herein, of sexually molesting her while she was between 13 and 18 years old. Kelso claims that the molestations started in 1980 and continued through 1985. If true, these alleged acts would constitute violations of Penal Code sections 261, 288, and 288, subdivision (a).[1]

Blackburn refused to answer most of the questions asked at his deposition, claiming the privilege against self-incrimination. The trial court denied his request for a protective order and he sought a writ of mandate/prohibition from this court. We stayed discovery proceedings, issued an alternative writ and heard oral argument.

At first, the trial court granted Kelso's request that Blackburn be precluded from testifying at trial as a consequence of his privilege claim, but

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise specified.

then reconsidered and denied that request. The court also denied Blackburn's request for immunity from prosecution regarding his testimony during discovery or trial. Notice of the request for immunity was sent to the Orange County and Los Angeles County District Attorney's offices.[2] The Orange County District Attorney's office filed points and authorities in opposition to the immunity request.[3] The bases for the opposition are that the statute of limitations for all possible offenses arising out of Kelso's charges is six years and since it is alleged that the last offenses were committed in 1985, any criminal prosecution would be barred after 1991. The prosecutor stated that Blackburn is no longer subject to prosecution, has no need for a grant of immunity and has no valid grounds for asserting his Fifth Amendment rights as to those offenses. The prosecutor is also concerned that, under the protection of immunity, Blackburn might testify about unrelated matters.

During the argument on the motion requesting immunity, the superior court judge expressed concern as to whether or not there could be any real threat of prosecution in light of the expired statute of limitations. To this Blackburn's attorney stated, "Let's suppose there were another allegation of a molest of a person of the same age five days ago. And that's clearly within the statute of limitations. Now, the issue is whether or not his testimony in this proceeding would be used or could be used for common plan and scheme under Evidence Code section 1101(b).[4] And I know this court has background in the district attorney's office and there is no statute of limitations with respect to that. [¶] So that testimony could conceivably be used in prosecution of another case. It's all theoretical. I know of no case that's pending. . . ." In the petition before this court, Blackburn continues with this claim asserting that his testimony during discovery or trial could be used to show intent, knowledge or motive at any time in the future if he is charged with any crimes remotely resembling the ones alleged by Kelso.

During oral argument here, Blackburn's attorney, Ronald Davis, stated for the first time, "We believe it [the statute of limitations] may not have run."

---

[2]Neither the notice nor the motion lists the subject matter of the inquiries for which immunity is requested.

[3]The request does not contain a declaration from a prosecutor stating a reasonable belief that the grant of immunity might or will hamper some future prosecution.

[4]Evidence Code section 1101, subdivision (b): "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

He based this belief on the provisions of section 803, subdivision (d).[5] As all parties agree that the statute of limitations for any criminal prosecution arising from Kelso's claims is six years, the statute could be extended up to nine years from the last act alleged by Kelso if Blackburn was out of the state for up to three years after the acts were allegedly committed.

## THE PRIVILEGE

"No person shall . . . be compelled in any criminal case to be a witness against himself. . . ." (U.S. Const., 5th Amend.) "The maxim, 'Nemo tenetur seipsum accusare,'[6] had its origin in a protest against the inquisitorial and manifestly unjust methods of interrogating accused persons, which has long obtained in the continental system, and, until the expulsion of the Stuarts from the British throne in 1688, and the erection of additional barriers for the protection of the people against the exercise of arbitrary power, was not uncommon even in England. While the admissions or confessions of the prisoner, when voluntarily and freely made, have always ranked high in the scale of incriminating evidence, if an accused person be asked to explain his apparent connection with a crime under investigation, the case with which the questions put to him may assume an inquisitorial character, the temptation to press the witness unduly, to brow-beat him if he be timid or reluctant, to push him into a corner, and to entrap him into fatal contradictions, which is so painfully evident in many of the earlier state trials, notably in those of Sir Nicholas Throckmorton, and Udal, the Puritan minister, made the system so odious as to give rise to a demand for its total abolition. The change in the English criminal procedure in that particular seems to be founded upon no statute and no judicial opinion, but upon a general and silent acquiesence of the courts in a popular demand. But, however adopted, it has become firmly imbedded in English, as well as in American, jurisprudence. So deeply did the iniquities of the ancient system impress themselves upon the minds of the American colonists that the states, with one accord, made a denial of the right to question an accused person a part of their fundamental law, so that a maxim, which in England was a mere rule of evidence, became clothed in this country with the impregnability of a constitutional enactment." (*Brown* v. *Walker* (1896) 161 U.S. 591, 596-597 [40 L.Ed. 819, 820-821, 16 S.Ct. 644].)

 Institutional acts can sometimes take the form of government brow-beating when a person is ordered to respond to inquiries which call for

---

[5] Section 803, subdivision (d): "If the defendant is out of the state when or after the offense is committed, the prosecution may be commenced as provided in Section 804 within the limitations of time prescribed by this chapter, and no time up to a maximum of three years during which the defendant is not within the state shall be a part of those limitations."

[6] No one is bound to accuse himself.

incriminating responses. When such is the case, the privilege provided by the Fifth Amendment requires complete protection against any use of compelled testimony and absolute immunity from prosecution for any of the testimony given. (*Murphy* v. *Waterfront Comm'n.* (1964) 378 U.S. 52, 93 [12 L.Ed.2d 678, 703-704, 84 S.Ct. 1594].) If a statute mandates the answering of questions which tend to incriminate the person asked, it must also provide absolute immunity from future prosecution for an offense to which the questions relate. (*Counselman* v. *Hitchcock* (1892) 142 U.S. 547, 564 [35 L.Ed. 1110, 1114, 12 S.Ct. 195].)[7] When a witness is compelled by law to testify about matters which are self incriminating, immunity statutes provide, in effect, an advance pardon for the crime which might be disclosed by the testimony. (*In re Critchlow* (1938) 11 Cal.2d 751, 756 [81 P.2d 966].)

## IMMUNITY IN CIVIL CASES

Varied public interests come into play when immunity is requested in situations where a civil litigant is being sued for acts which may also give rise to criminal charges. Such situations involve civil litigants seeking discovery, witnesses claiming the privilege against self-incrimination and the official duties of those charged with prosecuting crimes. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193].)

In *People* v. *Superior Court (Kaufman)* (1974) 12 Cal.3d 421 [115 Cal.Rptr. 812, 525 P.2d 716] the California Supreme Court rejected the contention that immunity cannot be granted unless expressly authorized by the Legislature. The court held that section 2019, subdivision (b)(1) of the Code of Civil Procedure[8], which stated that the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression, impliedly authorized the court to grant judicial immunity under some circumstances. (12 Cal.3d at p. 425.) In *Kaufman*, the district attorney's office requested that immunity from criminal prosecution be granted in a civil action *brought by it* involving charges of consumer fraud

---

[7]"Soon after the privilege against compulsory self-incrimination became firmly established in law, it was recognized that the privilege did not apply when immunity, or 'indemnity,' in the English usage, had been granted. . . ." (*Kastigar* v. *United States* (1972) 406 U.S. 441, 445, fn. 13 [32 L.Ed.2d 212, 217-218, 92 S.Ct. 1653].) One of the earliest examples was when "Parliament enacted an immunity statute in 1710 directed against illegal gambling . . . which became the model for·an identical immunity statute enacted in 1774 by the Colonial Legislature of New York. . . . These statutes provided that the loser could sue the winner, who was compelled to answer the loser's charges. After the winner responded and returned his ill-gotten gains, he was 'acquitted, indemnified (immunized) and discharged from any further or other Punishment, Forfeiture or Penalty, which he . . . may have incurred by the playing for, and winning such money. . . .' " (*Ibid.*)

[8]Now Code of Civil Procedure section 2025, subdivision (i).

and unfair competition. The Supreme Court directed the trial court to fashion and issue a protective order to compel the defendant to respond on deposition and trial to all proper inquiries by substituting sufficient protection in place of the privilege.

In *Daly* v. *Superior Court, supra,* 19 Cal.3d 132, a private civil litigant in a wrongful death action sought immunity for civil defendants who were union officials and who feared their testimony might subject them to criminal charges of conspiracy arising from the death. This request was made without giving notice to any prosecutorial agency, as the litigant-petitioner opined his discovery rights were of greater import than the mere possibility of impairment to prosecuting agencies on some potential criminal case. Concerned with the possible impairment of future prosecutions if such an approach were followed, the court found that a private litigant may not have immunity if it unduly hampers future prosecutions. ■ Notice of the subject matter of the inquiries with which the requested immunity order is concerned must be given to the prosecuting agencies involved "[t]o enable the prosecuting agency to make an informed judgment on whether to object to the proposed immunity order. . . ." (*Daly* v. *Superior Court, supra,* 19 Cal.3d at p. 148.) Thus, if the court receives a declaration from a prosecuting attorney who believes that the proposed grant of immunity might unduly hamper the prosecution of a criminal proceeding, "[t]he trial court must treat such an objection and declaration as conclusively establishing that an immunity order as described in the notice cannot be issued because it would or might unduly hamper criminal prosecution of the witness." (*Ibid.*)

*Gonzales* v. *Superior Court* (1980) 117 Cal.App.3d 57 [178 Cal.Rptr. 358] concerned three alleged fathers sued by the district attorney in civil court for paternity and child support. The three men were unconditionally ordered to answer certain interrogatories regarding their financial condition and sexual relationships, the answers to which might subject them to criminal prosecution. Each man refused to answer the questions on the ground that the answers might tend to incriminate him. The Court of Appeal directed the trial court to vacate its order to compel the answers and further directed that, should the district attorney again move for an order compelling answers, such order should only be issued with an adequate protective order in connection with any criminal prosecution later brought against the alleged fathers. (*Id.* at p. 72.)

In *Pacers, Inc.* v. *Superior Court* (1984) 162 Cal.App.3d 686 [208 Cal.Rptr. 743], the defendants in the civil action for assault and battery, relying on their privilege against self-incrimination, requested immunity in any prosecution arising from the same facts involved in the civil action

before they would answer any questions involving the incident. The trial court denied defendants immunity and granted plaintiff's request for an order prohibiting defendants from testifying at trial as a consequence of their failure to answer deposition questions. The Court of Appeal directed the trial court to set aside its order prohibiting defendants from testifying at trial and further directed the trial court to stay the civil proceedings until *after* the expiration of the criminal statute of limitations, thereby eliminating the spectre of a possible self-incrimination problem. (*Id.* at pp. 690-691.)

## DISCUSSION

Blackburn's situation requires discussion in several areas. With regard to whether or not he is entitled to claim the privilege, it must be decided if he is being compelled to give testimony and whether he has been asked to incriminate himself. With regard to the propriety of a grant of immunity, it is necessary to decide if Blackburn has sufficiently shown that privileged information is being sought by Kelso and, if he has made such a showing, whether he has provided the prosecuting agency with sufficient notice for it to make an informed judgment regarding what, if any, objection it should make to the proposed immunity order. We shall now discuss each of these areas separately.

### *Is petitioner being compelled to answer?*

Thus far, the trial court has not ordered Blackburn to answer any questions. However, Blackburn claims to be "between the Scylla[9] of providing testimony in his own defense that may be incriminatory and the Charybdis[10] of losing the case by asserting his Constitutional rights and remaining silent."

Blackburn's argument seems to be based on the premise that the Fifth Amendment privilege protects him from being subject to civil penalties. While accommodation in this regard is sometimes made to a defendant in a civil action,[11] it is done from the standpoint of fairness, not from any constitutional right. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 885 [120

---

[9]"[A] rock in the Strait of Messina off the S coast of Italy. . . . between Scylla and Charybdis, between two equally perilous alternatives, neither of which can be passed without encountering and probably falling victim to the other." (Random House College Dict. (rev. ed. 1984) p. 1185.)

[10]"A whirlpool in the Strait of Messina off the NE coast of Sicily." (Random House College Dict. (rev. ed. 1984) p. 227.)

[11]In *Pacers Inc.* v. *Superior Court, supra*, 162 Cal.App.3d 686, 690-691, the Court of Appeal directed the trial court to stay the proceedings in the civil action until after the expiration of the statute of limitations in the criminal action; in *Alvarez* v. *Sanchez* (1984) 158

Cal.Rptr. 384, 533 P.2d 1024].) The self-incrimination privilege is not applicable to matters that will subject a witness to civil liability. (*Warford* v. *Medeiros* (1984) 160 Cal.App.3d 1035, 1039 [207 Cal.Rptr. 94]; *Metalworking Machinery, Inc.* v. *Superior Court* (1977) 69 Cal.App.3d 791, 794 [138 Cal.Rptr. 369].) " 'There may be cases where the requirement that a criminal defendant participate in a civil action, at peril of being denied some portion of his worldly goods, violates concepts of elementary fairness in view of the defendant's position in an inter-related criminal prosecution. On the other hand, the fact that a man is indicted cannot give him a blank check to block all civil litigation on the same or related underlying subject matter. Justice is meted out in both civil and criminal litigation. . . . The court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side.' " (*People* v. *Coleman, supra,* 13 Cal.3d at p. 885, quoting *Gordon* v. *Federal Deposit Insurance Corporation* (D.C. Cir. 1970) 427 F.2d 578, 580 [138 App.D.C. 308].)

■ Whereas the Fifth Amendment privilege may be invoked by a civil litigant (*Segretti* v. *State Bar* (1976) 15 Cal.3d 878, 886 [126 Cal.Rptr. 793, 544 P.2d 929]), it does not provide for protection against civil penalties. **(4b)** "[W]hile the privilege of a criminal defendant is absolute, in a civil case a witness or party may be required either to waive the privilege or accept the civil consequences of silence if he or she does exercise it." (*Alvarez* v. *Sanchez, supra,* 158 Cal.App.3d at p. 712.)

*Has petitioner been asked to incriminate himself?*

■ Blackburn claims that, even though the prescribed period of limitations has expired, he still may be subject to criminal prosecution for two reasons: 1) there is a possibility that the six-year statute of limitations may have been tolled, and 2) there is a possibility that his testimony could be used some time in the future involving crimes against other persons. Blackburn is apparently requesting us to assume that Kelso's questions call for incriminating answers.

Whether it is the witness himself or the court who decides when a question calls for incriminating information has long been the subject of debate. When the secretary of Aaron Burr was asked if he understood a

Cal.App.3d 709, 715 [204 Cal.Rptr. 864], the Court of Appeal directed the trial court to set aside its harsh order of default against a defendant who claimed the privilege and to allow the defendant to proceed to trial with witnesses and evidence other than the testimony of the defendant; in *Daly* v. *Superior Court, supra,* 19 Cal.3d at page 151, the Supreme Court directed that should the plaintiffs in a civil action have further difficulties in obtaining discovery because of the defendant's claim of the self-incrimination privilege, the plaintiff might be entitled to a protective order granting immunity.

paper in cipher which he supposedly copied, he refused to answer the question on the ground that he might incriminate himself. Chief Justice Marshall opined: "When two principles come in conflict with each other, the Court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principles by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded. They are believed both to be preserved to a reasonable extent; and, according to the true intention of the rule, and of the exception to that rule, by observing that course which it is conceived Courts have generally observed. It is this: [¶] When a question is propounded, it belongs to the Court to consider and to decide, whether any direct answer to it, can implicate the witness. If this be decided in the negative, then he may answer it, without violating the privilege which is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The Court cannot participate with him in this judgement, because they cannot decide on the effect of his answer, without knowing what it would be; and, a disclosure of that fact to the judges, would strip him of the privilege which the law allows, and which he claims. It follows necessarily then, from this state of things, that if the question be of such a description, that an answer to it may, or may not criminate the witness, according to the purport of that answer-it must rest with himself, who alone can tell what it would be, to answer the question or not. If in such a case, he says upon his oath, that his answer would criminate himself, the Court can demand no other testimony on the fact. If the declaration be untrue, it is in consequence and in law, as much a perjury, as if he had declared any other untruth upon his oath; as it is one of those cases, in which the rule of law must be abandoned, or the oath of the witness be received." (*U.S.* v. *Burr* (C.C.D. Va. 1807) 25 F. Cas. 38, 39-40.)

In deciding whether a question may incriminate a witness, the courts have more recently been guided by the principle that protection must be confined to instances where the witness has reasonable cause to apprehend danger from a specific answer to a specific question. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified. . . . To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in

evidence.' [Citations.]" (*Hoffman* v. *United States* (1951) 341 U.S. 479, 486-487 [95 L.Ed. 1118, 1123-1124, 71 S.Ct. 814].)

It is not at all apparent in this case that Blackburn is being asked to incriminate himself. Because it has been more than six years since the last act alleged by Kelso[12], it appears that it may not even be possible that his answers might tend to incriminate him. It has long been the law that if a witness can no longer be punished, there is no need for the protection of the Fifth Amendment. "If, at the time of the transactions respecting which his testimony is sought, the acts themselves did not constitute an offense, or, if, at the time of giving the testimony, *the acts are no longer punishable*; if the statute creating the offense has been repealed; if the witness has been tried for the offense and acquitted, or, if convicted, has satisfied the sentence of the law; *if the offense is barred by the statute of limitations*, and there is no pending prosecution against the witness, he cannot claim any privilege under the provision of the constitution, since his testimony could not be used against him in any criminal case against himself, and consequently he is not compelled to be a witness 'against himself.'" (*Ex Parte Cohen* (1894) 104 Cal. 524, 528 [38 P. 364], italics added.)

However, thus far Blackburn's claims have been based on mere possibilities and speculation. There is no indication yet that he has actually been asked to incriminate himself.

"A party is not entitled to decide for himself whether he is protected by the Fifth Amendment privilege. Rather, this question is for the court to decide after conducting 'a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded [citation].'" (*Warford* v. *Medeiros, supra*, 160 Cal.App.3d at p. 1045, quoting *S.E.C.* v. *First Financial Group of Texas, Inc.* (5th Cir. 1981) 659 F.2d 660, 658, italics omitted.) "The reason for the requirement that the person claiming the privilege must object with specificity to the information sought from him is that only where this is done is the trial court enabled to make a particularized inquiry required of it." (*Warford* v. *Medeiros, supra*, 160 Cal.App.3d 1035, 1045.)

The privilege extends to answers that would in themselves support a conviction and likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the witness. The witness cannot be expected to state the precise hazard that he fears because he might then be compelled to surrender the very protection which the privilege is designed to

---

[12]This information was provided during oral argument by petitioner's counsel, who claimed that Kelso's 18th birthday was June 4, 1985.

guarantee. *(Malloy* v. *Hogan* (1964) 378 U.S. 1, 11-12 [12 L.Ed.2d 653, 661-662, 84 S.Ct. 1489]; *Hoffman* v. *United States, supra,* 341 U.S. at p. 486 [95 L.Ed. at pp. 1123-1124].) Nonetheless, when it is not evident from the circumstances that the questions call for incriminating information, the court must require an explanation as to why and how the answers might be incriminating. "The substance and scope of the particularized inquiry will, of course, vary with the circumstances peculiar to the cases in which it must be made. Although for this reason it is impossible to devise an exhaustive list of the matters that should be within the scope of the inquiry or upon which the inquiry should turn, those that will often be pertinent include: 1) the nature of the information sought to be disclosed, 2) implications derived from the question asked, 3) the nature and verifiability of any investigation or proceeding claimed to justify the fear of incrimination, or the possibility that any such investigation or proceeding may be commenced, 4) matters disclosed by counsel in argument on the claim of privilege, and 5) evidence previously admitted." *(Warford* v. *Medeiros, supra,* 160 Cal.App.3d at p. 1045, fn. 8, citing 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 44.3, p. 1619.)

 Petitioner's counsel's belief that the statute of limitations may not have run is an insufficient explanation. He must provide the court with more information than that if he expects his privilege objection to be sustained.

Blackburn's claim that Evidence Code section 1101, subdivision (b) might allow his testimony here to be used in a future prosecution for another child molest, without more, is also an insufficient explanation. However, that is not to say that the privilege is unavailable to a person concerned about a future indirect prosecution. It may not only be available to future prosecution, it may be available to future crimes. *(Marchetti* v. *United States* (1968) 390 U.S. 39, 54 [19 L.Ed.2d 889, 901, 88 S.Ct. 697].)

In *Marchetti,* the defendant was convicted for wilfully failing to register and to pay an occupational tax for his gambling enterprise. The defendant argued that the statutory obligations to register and to pay the occupational tax violated his constitutional privilege against self-incrimination. The United States Supreme Court stated, "[t]he central standard for the privilege's application has been whether the claimant is confronted by *substantial and 'real,' and not merely trifling or imaginary,* hazards of incrimination. . . . [¶] . . . Prospective registrants can reasonably expect that registration and payment of the occupational tax will significantly enhance the likelihood of their prosecution for future acts, and that it will readily provide evidence which will facilitate their convictions. . . . Insubstantial claims of the privilege as to entirely prospective acts may certainly be asserted, but

such claims are not here, and they need only be considered when a litigant has the temerity to pursue them." (*Marchetti* v. *United States, supra,* 390 U.S. at pp. 53-54 [19 L.Ed.2d at pp. 900-901], italics added.)

■ Character evidence is inadmissible when offered to prove conduct on a specified occasion. (Evid. Code, § 1101, subd. (a).) The purpose of this rule is to avoid placing an accused in the position of defending against crimes for which he has not been charged and to avoid having a jury convict him on prejudicial character evidence alone. (*People* v. *Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91].)

■ However, subdivision (b) of Evidence Code section 1101 permits "other crimes" evidence if its purpose is to prove something other than a disposition to commit the crime charged. Its admissibility is carefully monitored and depends upon three principal factors: "(1) the materiality of the fact sought to be proved or disproved; (2) the tendency of the uncharged crime to prove or disprove the material fact; and (3) the existence of any rule or policy requiring the exclusion of relevant evidence." (*People* v. *Thompson* (1980) 27 Cal.3d 303, 315 [165 Cal.Rptr. 289, 611 P.2d 883], italics omitted.)

In order to satisfy the requirement of materiality, the fact sought to be proved must actually be in dispute. "If an accused has not 'actually placed that [ultimate fact] in issue,' evidence of uncharged offenses may not be admitted to prove it." (*People* v. *Thompson, supra,* 27 Cal.3d at p. 315, quoting from *People* v. *Thomas* (1978) 20 Cal.3d 457, 467 [143 Cal.Rptr. 215, 573 P.2d 433].) In deciding whether or not evidence of other crimes has a tendency to prove the material fact in dispute, the court must first determine whether or not the uncharged offense serves logically, naturally, and by reasonable inference to establish that fact. To determine whether or not there is a rule or policy requiring the exclusion of the "other crimes" evidence, the court must consider that Evidence Code section 1101, subdivision (a) expressly prohibits the use of such evidence if the only theory of relevance is that the accused has a propensity to commit the crime charged, and that there is a grave danger of prejudice to an accused when evidence of an uncharged crime is given to a jury. (*People* v. *Thompson, supra,* 27 Cal.3d at pp. 316-317.) In addition, the evidence will not be admitted, even for a legitimate purpose, if it is too remote, and it must only be used if it has substantial probative value. If there is any doubt, the evidence should be excluded. (Evid. Code, § 352; see also, *People* v. *Kelley* (1967) 66 Cal.2d 232, 239 [57 Cal.Rptr. 363, 424 P.2d 947].)

■ Thus far, Blackburn has only shown a trifling and speculative hazard of incrimination. With regard to a possible tolling of the statute of

limitations, he must make a sufficient showing to the trial judge that his belief is based on a reasonable fear.[13] With regard to his claim regarding "other crimes" evidence, the procedural safeguards available to him appear to be more than sufficiently protective. He has not demonstrated a reasonable belief that his testimony in this civil case will require him to incriminate himself. The only information contained in the record relates to generalized child molestation of the civil plaintiff, Kelso. There is nothing peculiar or particular that has been brought to the attention of this court with regard to Blackburn's alleged conduct. In order to demonstrate that his assertion of the privilege should be sustained, Blackburn must satisfy the trial judge that the questions call for answers which might tend to incriminate him in a future prosecution; for example, that his testimony will involve acts so distinctive and unique that the evidence could be admitted in a later prosecution against him. Only at that point must the trial court, pursuant to *Warford* v. *Medeiros*, *supra*, 160 Cal.App.3d 1035 state the reasons for sustaining or overruling the privilege objection.

### *Is the real party in interest requesting privileged information?*

At his deposition, Blackburn claimed the privilege against self-incrimination and refused to answer almost every question, including those regarding his marital status, his prior addresses, his previous convictions, if any, his correspondence with Kelso or possession of photographs or films of her or her family and his ownership of a video camera. On their face some of these questions appear to be so innocuous that it is difficult to believe any possible interpretation that would incriminate.

Blackburn's blanket refusal to provide information is unacceptable. He must claim the privilege with specific reference to the particular testimony sought.

### *Has petitioner provided the prosecuting agency with sufficient notice?*

The Fifth Amendment does not provide a constitutional right to immunity. "Whatever their response to requests for accommodation of the conflicting constitutional rights of a defendant in concurrent civil and criminal proceedings, courts have consistently refrained from recognizing any constitutional need for such accommodation." (*People* v. *Coleman*, *supra*, 13 Cal.3d 867, 885, italics omitted.) "The design of the constitutional privilege is . . . to protect [a person] against being compelled to furnish evidence to

---

[13]During oral argument petitioner's counsel expressed concern that the requirement of such an explanation would force Blackburn to surrender his constitutional protection. The court should be alert to this hazard and provide sufficient protection to Blackburn.

convict him of a criminal charge. . . ." (*Brown* v. *Walker, supra,* 161 U.S. at pp. 605-606 [40 L.Ed. at p. 824].) "A person who commits a criminal act is bound to contemplate the consequences of exposure . . . and ought not to call upon the courts to protect that which he has himself esteemed to be of such little value." (*Id.* at p. 605 [40 L.Ed. at p. 824].)

■ However, from the standpoint of fairness, a witness in a civil case may call upon the courts for protection as long as that protection would not unduly hamper prosecutors. "To enable the prosecuting agency to make an informed judgment on whether to object to the proposed immunity order, the notice must state the subject matter of the inquiries to which the witness' answers are to be immunized from use or derivative use. This statement must be in a form that when incorporated into the immunity order will provide the witness with a clear guide to what questions are within and what are without the immunity grant." (*Daly* v. *Superior Court, supra,* 19 Cal.3d 132, 148.) ■ Here, neither the notice nor the accompanying motion states the subject matter to which Blackburn's answers are to be immunized.[14]

However, Blackburn raises an issue that was not directly addressed in *Daly.* He states that it is unfair to the party claiming the privilege to be required to inform the prosecutor *why* he needs immunity. In this regard, Blackburn again argues that his having to explain why he believes the statute of limitations may be tolled would require him to surrender the very information he claims is privileged. Blackburn's reasoning is faulty. He is the one requesting a favor of the court and the prosecutor. The issue of the statute of limitations is central to the district attorney's response to his immunity request.[15]

The policy behind *Daly* is that if it does not unduly hamper the prosecutorial agency, immunity may be granted to private litigants. The policy does

---

[14]The notice merely states that courts can and do grant immunity and that Blackburn has served the district attorney's office with a copy of the notice and motion.

The motion does not mention areas of inquiry but does state "Plaintiff's unverified complaint filed June 17, 1992, alleges that the defendant molested his step-daughter, Pamela Kelso while she was between the ages of 13 and 18. [¶] The complaint alleges that Pamela was born on June 4, 1967, which would mean that the alleged molestation began sometime in 1980 and continued through 1985. [¶] The conduct, if true, would constitute violations of California Penal Code Sections 261, 288 and 288(a)."

[15]Portions of the district attorney's opposition to immunity request: "Violations of Penal Code sections 261, 288 and 288(a) [*sic*] are punishable by imprisonment in the state prison for three, six or eight years. Since section 799 [no Limitation For Commencement] is inapplicable to those offenses, any criminal prosecution against Defendant Blackburn for the alleged molestation of Plaintiff Kelso would have had to be commenced within six years of the offenses. Since it is alleged that the last offenses were committed in 1985, any criminal prosecution would have been barred after 1991. [¶] In short, since Defendant Blackburn is no longer subject to prosecution for the alleged offenses, he has no need for a grant of immunity and no valid grounds for asserting his Fifth Amendment rights as to those offenses."

not allow for a private litigant to lay a false scent by duping the prosecutor or not being forthright regarding the request. Thus, while Blackburn is certainly not bound to inform the district attorney of his reasons for claiming the privilege, if he wants immunity he is bound to provide information sufficient for the prosecutor to make an informed judgment. Since it appears that the statute of limitations has expired, Blackburn must inform the district attorney why he still needs to be immunized. Once he does that, the district attorney's office will be in a position to make an informed decision regarding an objection.

Because Blackburn has not demonstrated that he has been compelled to testify, that he has been asked to incriminate himself, that Kelso seeks privileged information or that he is entitled to immunity, he is not entitled to any extraordinary relief from this court. The alternative writ is dissolved and the petition for writ of mandate/prohibition is denied. This court's previously issued stay order is dissolved upon finality of this decision.

Sills, P. J., and Moore (H. T.), J., concurred.